IN THE UNITED STATES FEDERAL COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **TOMMY BUCHANAN,** | ) |
| | ) |
| | ) Case No.: |
| Plaintiff, | ) |
| | ) **JUDGE** |
| v. | ) **MAGISTRATE JUDGE** |
| | ) |
| **COCA-COLA BOTTLING COMPANY** | ) |
| **CONSOLIDATED,** | ) **JURY DEMAND** |
| | ) |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** the Plaintiff, Tommy Buchanan, by and through counsel, and respectfully submits his Complaint against Defendant, Coca-Cola Bottling Company Consolidated; and in support thereof would allege as follows:

### I. PARTIES

1. Plaintiff, Tommy Buchanan, is a citizen and resident of Sumner County, Tennessee.

2. Defendant, Coca-Cola Bottling Company Consolidated, is a for-profit Corporation formed in Delaware and registered to conduct business in the state of Tennessee. Coca-Cola Bottling Company Consolidated's principal office is located at 4100 Coca Cola Plaza, Charlotte, NC 28211-3588. Defendant may be served through its registered agent for service process, CT Corporation System, 800 S. Gay St., Ste. 2021, Knoxville, TN 37929-2373.

### II. JURISDICTION AND VENUE

3. All of the events complained of herein occurred within this Judicial District and Defendant is an entity doing business herein, which gives rise to venue in this district under 28 U.S.C. § 1391(b).

1

4. This Court has jurisdiction over the lawsuit in that it arises under Title VII of the Civil Rights Act of 1964 prohibiting discrimination based on gender, violations of Tennessee common law prohibiting termination in retaliation for exercising a statutory or constitutional right, and violations of the Tennessee Human Rights Act prohibiting discrimination based on gender and/or age, violation of the Age Discrimination in Employment Act, and violation of the Americans with Disabilities Act. This Court has supplemental jurisdiction over all state law claims alleged in this complaint under 28 U.S.C. § 1367 as there is a common nucleus of operative facts between the state and federal law claims.

### III. FACTS

5. Defendant hired Plaintiff on July 6, 2009 as a Logistics Operator.

6. On or about July 25, 2014 Plaintiff attended a meeting at which Defendant's representatives discussed moving the plant to a third shift.

7. At that time, Defendant's representatives asked if anyone was unable to move to a third shift; Plaintiff advised them that he could not do so because of his family obligations and his health.

8. On or about August 24, 2014 Plaintiff applied for an open position with Defendant and was advised by a Warehouse Manager that the Manager would tell Plaintiff when his interview was scheduled.

9. Plaintiff received recommendations from several of his co-workers as well as managers, but never received an interview.

10. On or about September 11, 2014 a company-wide email was circulated stating that the position for which Plaintiff had applied had been filled.

11. On or about October 7, 2014 Plaintiff met with a Human Resources representative to discuss the manner in which his application had been handled.

12. In November 2014 Plaintiff was forced to move from his regular day shift to a third shift schedule.

13. On several occasions during November 2014 Plaintiff called to advise his supervisor that he might be late for his shift, but he managed to make it in on time on each occasion save November 18, 2014 when he was approximately 15 minutes late for work after being cleared to arrive up to one hour late.

14. On or about November 26, 2014 Plaintiff learned that his permanent start time would now be 10:00 p.m. on Wednesdays as well as working his normally scheduled hours.

15. Plaintiff's schedule continued somewhat erratically until he was given less than one day notice that he would be required to work on November 26, 2014.

16. Plaintiff advised his supervisor, Willie Allen ("Allen") that he would unable to make the newly scheduled shift due to having plans previously in place, but Allen's response to Plaintiff's notification of plans was, "No you do not."

17. On November 26, 2014 three members of Plaintiff's team did not come to work due to the lack of notice that was provided to them regarding that day's shift.

18. On or about December 2, 2014 production manager Brian Alexander ("Alexander") brought Plaintiff to his office for a meeting with Allen regarding Plaintiff's missed shift on November 26 which had been listed as a no-call/no-show and allegations that Plaintiff had been late for his shift a number of times over the past month.

19. Plaintiff advised Allen and Alexander that he had only been late once that he had advised Allen that he would not be able to come to work on November 26 and that he had only

3

been late on one occasion; as such he protested the classification of his absence as a no-call/no-show on the grounds that he had provided notification prior to his absence and further advised them that he had only been late on one occasion despite several times when he thought he might be late.

20. Further, Plaintiff questioned why he was receiving a written warning when generally schedule adherence issues such as those alleged by Allen and Alexander would result in only a verbal warning.

21. Finally, Plaintiff objected on the grounds that he was not provided with the minimum 24 hour notice for the schedule change on November 26, which was company policy.

22. Due to the inaccurate nature of the allegations leading to the discipline, the fact that more severe discipline was being used against Plaintiff than had been used against other, similarly situated employees, and the fact that the company failed to adhere to its own policy regarding the change in schedule, Plaintiff refused to sign the written warning.

23. Later in the day on December 2, 2014 Plaintiff was called into a conference room with Allen, Alexander, and human resources representative Hope Alwine who advised Plaintiff that he was being written up for insubordination for failing to attend a mandatory meeting, and that he was being terminated.

24. Plaintiff asked when the meeting was made mandatory but was not given an answer; Plaintiff then advised them that he had not attended such a meeting in the past 2 years, but again failed to illicit a response.

IV. CAUSES OF ACTION

**Count 1: Violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 Prohibiting Discrimination Based on Race**

4

25. Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

26. Plaintiff is African-American, and as such is a member of a protected class.

27. Plaintiff suffered adverse employment action when he was terminated.

28. Plaintiff was well qualified for his position as a Logistics Operator.

29. Plaintiff was treated less favorably than similarly situated, non-protected employees in that he was given a written warning where a verbal warning would normally have been issued and was ultimately terminated.

30. Defendant's termination of Plaintiff was part of a knowing and intentional discrimination against Plaintiff in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000.

31. As a direct and proximate result of Defendant's violation of the Civil Rights Act of 1964, as amended, Plaintiff has suffered and continues to suffer a loss of income and other employment benefits.

32. As a direct and proximate result of Defendant's violation of the Civil Rights Act of 1964, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and suffering, and other damages.

**Count 2: Violations of the Common law of Tennessee for Retaliation**

33. Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs of the Complaint.

34. Plaintiff was an "at-will" employee of the defendant.

35. Defendant retaliated against Plaintiff for Plaintiff's refusal to sign a written warning that was being given to him despite lesser measures being the norm in the

5

circumstances, the information upon which the warning being based being incorrect, and the company's failure to abide by its own policy regarding schedule changes.

36. As a direct and proximate result of Defendant's violation of the common law of Tennessee, Plaintiff has suffered and continues to suffer a loss of income and other employment benefits.

37. As a direct and proximate result of Defendant's violation of the common law of Tennessee, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and suffering, and other damages.

### Count 3: Violations of the Tennessee Human Rights Act Prohibiting Discrimination Based on Race

38. Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs of the Complaint.

39. Defendant is a "person" as defined by the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.*

40. Defendant did segregate or classify Plaintiff based upon his race in a way that would tend to deprive him of employment opportunities or otherwise adversely affect him status as an employee in violation of T.C.A. § 4-21-101 *et seq.*

41. Defendant's treatment of Plaintiff in failing to consider him for the position for which he applied, and ultimately the decision to terminate Plaintiff was discriminatory and in violation of the Tennessee Human Rights Act.

42. As a direct and proximate result of Defendant's violation of the Tennessee Human Rights Act Plaintiff has suffered and continues to suffer loss of income and other employment benefits, distress, humiliation, embarrassment and emotional pain and suffering and other damages.

## V. DAMAGES

43. As a direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964 prohibiting discrimination based on race, violations of Tennessee common law prohibiting termination in retaliation for exercising a statutory or constitutional right, and violations of the Tennessee Human Rights Act prohibiting discrimination based on race, Plaintiff has suffered and continues to suffer physical and mental distress, humiliation, embarrassment, emotional pain and other damages.

## VI. PRAYER FOR RELIEF

Wherefore, Premises Considered, Plaintiff prays of this Honorable Court as Follows:

1. That proper process issue and be served upon the Defendant;
2. That the Defendant be required to answer within the time prescribed by law;
3. That a judgment be issued against Defendant, ordering Defendant grant Plaintiff compensatory damages, reinstatement, back pay, and front pay;
4. That this Court grant a permanent injunction, enjoining the Defendant, its officers, successors, assigns, and all persons in active consort or participation with it from engaging in employment practice(s) which discriminate on the basis of race;
5. That Plaintiff be granted all lost income and benefits to which he is entitled as requested herein above;
6. That this matter be set for trial by jury;
7. That Plaintiff be granted his reasonable attorney's fees and all discretionary costs in this action; and,
8. That Plaintiff be granted such other, further, or general relief to which he may be entitled as the Court deems fit and as justice and equity may require.

Respectfully submitted,

**ALLMAN & ASSOCIATES**

/s/Andy L. Allman
Andy L. Allman, BPR # 17857
131 Saundersville Road, Suite 110
Hendersonville, TN 37075
Phone: (615) 933-0110
Fax: (615) 265-8766
andy@andylallman.com